COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Beales and Senior Judge Bumgardner
Argued by teleconference


JAMAAL L. REID, S/K/A
  JAMAL L. REID
                                                                OPINION BY
v.        Record No. 1571-09-3                        JUDGE ROBERT P. FRANK
                                                              AUGUST 31, 2010
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
                              David A. Melesco, Judge

                James C. Martin (Martin & Martin Law Firm, on brief), for
                appellant.

                Gregory W. Franklin, Assistant Attorney General (Kenneth T.
                Cuccinelli, II, Attorney General, on brief), for appellee.


        Jamaal L. Reid, s/k/a Jamal L. Reid, appellant, was convicted, in a bench trial, of

possessing a firearm while under the age of 29 after a felonious juvenile adjudication, in

violation of Code § 18.2-308.2.  On appeal, he contends the trial court erred in (1) admitting

appellant's statement when he was not given the warnings under Miranda v. Arizona, 384 U.S.

436 (1966); (2) finding the evidence sufficient to convict; and (3) violating his due process rights

by convicting him of the offense.  The Commonwealth filed a motion to dismiss, invoking the

"Fugitive Disentitlement Doctrine."  Because we conclude that the motion to dismiss should be

granted, we do not address appellant's appeal.

BACKGROUND

On May 29, 2009, appellant was convicted of possession of a firearm in violation of Code § 18.2-308.2.[1] He was sentenced on June 30, 2009 to two years in the penitentiary.[2] He filed his notice of appeal on July 1, 2009. The trial court set an appeal bond on July 6, 2009 in the amount of $25,000 with surety.

The conditions of the bond included:

> The defendant will appear as required for all proceedings in this case; the defendant will remain in contact with his attorney throughout the pendency of this case; the defendant will appear to Judge Melesco either at every docket call or in Judge Melesco's courtroom throughout the pendency of this case beginning September 1, 2009 at 9:00 a.m.; the defendant will report every two weeks to the Danville Probation and Parole Office and submit to drug screenings as required; the defendant shall be of good behavior; and the defendant may not leave the Commonwealth of Virginia.

Appellant was released after posting this bond on July 13, 2009.

In conjunction with his release, appellant signed a recognizance on July 13, 2009 agreeing to the above listed conditions of his appeal bond. On the same date, appellant also acknowledged, in writing, he must appear at the September 1, 2009 docket call at 9:00 a.m. He did appear at that docket call. On September 1, 2009, appellant acknowledged in writing he must appear at the November 3, 2009 docket call at 9:00 a.m. He appeared on that date as well. At that docket call, he acknowledged, in writing, that he must appear at the January 5, 2010 docket call at 9:00 a.m.

By letter dated November 16, 2009, appellant's probation officer advised the trial court appellant did not report to his probation officer in October, nor has the probation officer been

---

[1] Appellant was also convicted of trespassing and possession of marijuana but these convictions are not subject to this appeal.

[2] The sentencing order was entered August 12, 2009.

able to contact appellant. The trial court issued a capias for appellant's arrest on November 19, 2009.

On November 24, 2009, the Commonwealth's attorney moved for revocation of appellant's appeal bond based on appellant's failure to appear at a November 18, 2009 preliminary hearing for a new felony.[3] The Danville General District Court issued a capias for appellant's arrest on November 23, 2009.

The trial court revoked appellant's appeal bond and issued a second capias on December 4, 2009. Appellant did not appear at the January 5, 2010 docket call.

On January 20, 2010, the Commonwealth filed a motion asking the trial court to conduct a hearing to determine whether appellant is a fugitive from justice.

The hearing was conducted on February 1, 2010. The Commonwealth's attorney, with no objection from appellant's counsel, related that appellant did not appear at the January 5, 2010 docket call and that the probation office had had no contact with appellant since November of 2009. Appellant's counsel indicated he sent an investigator to locate appellant but was unsuccessful. Appellant also failed to respond to letters sent to him by counsel. The trial court declared appellant to be a fugitive.

Appellant filed a petition for appeal on January 4, 2010. On February 11, 2010, the Commonwealth filed with this Court a motion to dismiss appellant's petition for appeal, based on the "Fugitive Disentitlement Doctrine." This Court granted the petition by *per curiam* order entered March 3, 2010, withholding a finding on the Commonwealth's motion to dismiss, and directing both parties to include in their briefs argument on that motion.[4]

---

[3] Appellant had been arrested for that felony on August 21, 2009.

[4] The motion to dismiss was filed prior to the granting of the petition for appeal. The petition was granted for purposes of judicial economy so that if the motion was denied, there would be no delay in addressing the merits of the appeal. Because we grant the

<u>Exhaustion of Commonwealth's Remedies</u>

Appellant contends the record does not indicate the Commonwealth has exhausted all available remedies to locate appellant. Specifically, he argues there is no evidence that a bond forfeiture proceeding has been instituted, nor that appellant's bondsman has even been notified of appellant's status.[5]

Appellant cites no authority, nor are we aware of any that requires the Commonwealth to exhaust available remedies to locate a fugitive appellant before the doctrine can be evoked.[6] Appellant refers only to <u>Degen v. United States,</u> 517 U.S. 820, 826 (1996), for the proposition: "We nonetheless are satisfied the District Court has the means to resolve these dilemmas without resorting to a rule forbidding all participation by the absent claimant." In context, this quote did not address whether the government had a duty to exhaust available remedies to locate the fugitive appellant. Instead, it only addressed the district court's ability to determine whether to stay the civil forfeiture suit until the criminal case was concluded. Thus, appellant cited no authority to support his argument, nor did he develop this argument.[7]

Rule 5A:20 required that an appellant's opening brief contain the "principles of law, the argument, and the authorities relating to each question presented." Pursuant to that rule, we have held that "[u]nsupported assertions of error 'do not merit appellate consideration.'" <u>Jones v.</u>

---

Commonwealth's motion to dismiss, we conclude that the petition for appeal was improvidently granted.

[5] In fact, the Commonwealth stated at appellant's February 1, 2010 hearing that the trial court had revoked appellant's bond.

[6] At oral argument, appellant conceded he was aware of no authority for that proposition.

[7] Furthermore, in response to <u>Degen</u>, "Congress enacted the Civil Asset Forfeiture Reform Act of 2000 ('CAFRA'), a statutory fugitive disentitlement doctrine that accomplished precisely the result that the Supreme Court concluded could not be achieved through the common law." <u>United States v. All Funds on Deposit at Citigroup Smith Barney Account No. 600-00338</u>, 617 F. Supp. 2d 103, 123 (E.D.N.Y. 2007).

Commonwealth, 51 Va. App. 730, 734, 660 S.E.2d 343, 345 (2008) (quoting Buchanan v.

Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992)). Moreover, "when a party's 'failure

to strictly adhere to the requirements of Rule 5A:20(e)' is significant, 'the Court of Appeals may

. . . treat a question presented as waived.'" Parks v. Parks, 52 Va. App. 663, 664, 666 S.E.2d

547, 548 (2008) (quoting Jay v. Commonwealth, 275 Va. 510, 520, 659 S.E.2d 311, 317 (2008)).

We therefore find appellant's failure is significant, and we consider this argument waived.

Procedural Defects

Responding to the Commonwealth's motion to dismiss, appellant maintains the

Commonwealth failed to provide an adequate record to allow this Court to decide the motion.

Specifically, he argues the relevant trial transcript was not properly filed in accordance with Rule

5A:8.[8] He also argues the documents attached to the motion and supporting the motion labeled

"appendix" did not comply with the requirements of Rule 5A:25. He contends neither the

motion, nor its attachments, were ever made part of the appendix.

The Commonwealth responds that appellant's reliance on Rules 5A:8 and 5A:25 is

misplaced but that Rule 5A:2 controls. We agree. Rule 5A:2(a), addressing motions practice,

stated only:

> All motions shall be in writing and filed with the clerk of this
> Court of Appeals. Opposing counsel shall have ten days after such
> motion is filed to file with such clerk a reply to such motion. All
> motions or replies shall be in quadruplicate. Carbon copies are
> acceptable. No motion shall be argued orally, except by leave of
> court.[9]

---

[8] Appellant conceded at oral argument that the Commonwealth's attachments were accurate and were part of the trial record.

[9] This was the language of Rule 5A:2(a) at the time the documents in this case were filed. Amendment to the Rules took effect July 1, 2010.

Rule 5A:8 obligates the appellant to file the transcript, or written statement in lieu thereof, and give notice to opposing counsel. As appellee, the Commonwealth has no duty to file any transcript or give appellant notice thereof.

Rule 5A:25(a) requires appellant to file an appendix. Subsection (d) requires appellant to file "a written statement signed by all counsel setting forth an agreed designation of the parts of the record to be included in the appendix." If there is no agreement, the Rule sets forth a procedure where appellant files a statement of the questions to be presented and a designation of the contents to be included in the appendix. Appellee shall thereafter file a designation of any additional contents to be included.

Nothing in this Rule requires appellee to designate any portion of the record to support its motion to dismiss under Rule 5A:2.

It is clear from a reading of Rule 5A:25(e) that the contents of the appendix relate to the questions presented on appeal, that is, those items necessary to evaluate whether the trial court erred. The appendix serves this Court to evaluate the merits of appellant's assigned error. Moreover, while the appendix should generally contain everything relevant to the questions presented, "[t]he Court of Appeals may . . . consider other parts of the record." Rule 5A:25(h); see also Tjan v. Commonwealth, 46 Va. App. 698, 704 n.2, 621 S.E.2d 669, 672 n.2 (2005).

The Commonwealth's motion to dismiss, in this case, does not address the merits of appellant's appeal. To the contrary, the motion contends we should not address the merits because of the "Fugitive Disentitlement Doctrine." Rules 5A:8 and 5A:25 are not pertinent to a Rule 5A:2 motion.

Thus, we find no merit in appellant's procedural argument. We conclude that all documents necessary for the resolution of the Commonwealth's motion are properly before us.

<u>Applicability to Criminal Cases</u>

Acknowledging the applicability of the Fugitive Disentitlement Doctrine in civil cases, appellant contends no Virginia appellate cases have extended the doctrine to criminal cases. We disagree.

The Supreme Court of Virginia, over 150 years ago, in <u>Sherman v. Commonwealth</u>, 55 Va. (14 Gratt.) 677 (1858), addressed this very issue. While not employing the terms "fugitive entitlement doctrine," the Supreme Court of Virginia recited that the plaintiff in error (appellant) escaped from custody and was at large at the time of the appeal and concluded:

> [I]t is considered by the court that so much of the order awarding the writ of error in this case as directed it to operate as a supersedeas as to the judgment of conviction in the petition set forth, be discharged; and it is further ordered, that said writ of error be dismissed on the first day of May next, unless it shall be made to appear to this court, on or before the day last aforesaid, that said plaintiff in error is in custody of the proper officer of the law.

<u>Id.</u> The same action was followed in <u>Leftwich v. Commonwealth</u>, 61 Va. (20 Gratt.) 716, 723 (1870).

In <u>Jones v. Commonwealth</u>, 228 Va. 427, 435, 323 S.E.2d 554, 558 (1984), the Supreme Court of Virginia cited <u>Sherman</u> and <u>Leftwich</u> but denied the Commonwealth's motion to dismiss because appellant, after having escaped, surrendered himself. The Supreme Court of Virginia then addressed the merits of the appeal.

The Fugitive Disentitlement Doctrine was first addressed by the United States Supreme Court in <u>Smith v. United States</u>, 94 U.S. 97 (1876). The Court removed an appeal from its docket and subsequently dismissed the appeal because appellant had escaped from custody.

In 1970, the United States Supreme Court, in <u>Molinaro v. New Jersey</u>, 396 U.S. 365 (1970) (*per curiam*), applied the doctrine to a criminal appeal.

> No persuasive reason exists why this Court should proceed to adjudicate the merits of a criminal case after the convicted

defendant who has sought review escapes from the restraints placed upon him pursuant to the conviction. While such an escape does not strip the case of its character as an adjudicable case or controversy, we believe it disentitles the defendant to call upon the resources of the Court for determination of his claims.

Id. at 366. See also Degen, 517 U.S. 820, Ortega-Rodriguez v. United States, 507 U.S. 234 (1993).

Contrary to appellant's argument, the Supreme Court of Virginia and the United States Supreme Court have consistently applied the doctrine to criminal cases. We find no merit in appellant's contention.

Fugitive Disentitlement Doctrine

Having determined that the doctrine applies to criminal cases, we must now decide whether the Commonwealth has proven the elements of the doctrine.

The Supreme Court of Virginia in Sasson v. Shenhar, 276 Va. 611, 667 S.E.2d 555 (2008), established the governing principles for the application of the "Fugitive Disentitlement Doctrine." That case involved protracted custody litigation in Spain and Fairfax County. The circuit court ordered Sasson, who had taken the child to Spain, to return the child to the United States. He failed to do so but appealed the circuit court order. Sasson did not appear at a show cause hearing. The circuit court then found Sasson in contempt of court for not returning the child to the United States and issued a capias for his arrest.

Sasson appealed the contempt and custody judgments to this Court. Shenhar filed a motion to dismiss with this Court contending Sasson was a fugitive based on his disobedience of the circuit court order to return the child to the United States. This Court granted the motion under the "Fugitive Disentitlement Doctrine." The Supreme Court of Virginia agreed with this Court and opined:

> In order to ensure that a dismissal of an appeal is imposed only in those cases where no lesser sanction or remedy is available, courts

- 8 -

generally use a three-part test to determine whether the Fugitive Disentitlement Doctrine should be applied to bar an appeal. In order to employ the doctrine, the following elements are required: (1) the appellant must be a fugitive, (2) there must be a nexus between the current appeal and the appellant's status as a fugitive, and (3) dismissal must be necessary to effectuate the policy concerns underlying the doctrine . . . . Moreover, when deciding to apply the doctrine, courts must exercise "restraint," and its use must "be a reasonable response to the problems and needs that provoke it." Degen v. United States, 517 U.S. 820, 823-24 (1996).

Id. at 623, 667 S.E.2d at 561 (internal citations omitted).

The Supreme Court of Virginia then applied these factors to the facts. First, the Court concluded Sasson was a fugitive, noting that he failed to appear at the contempt hearing and disobeyed the circuit court order requiring him to return the child to the United States. Id. at 623-24, 667 S.E.2d at 561.

The Court then found there was a sufficient "nexus" between the issues raised in the appeal and Sasson's status as a fugitive. By wrongfully taking the child from the United Sates, Sasson interfered with Shenhar's parental rights. Id. at 627, 667 S.E.2d at 564. The issue on appeal was the child's custody.

Lastly, the Court addressed whether dismissal is necessary to effectuate the policy concerns underlying the doctrine and concluded:

> Finally, the record amply supports the Court of Appeals' determination that Sasson is unwilling to submit to the jurisdiction of Virginia's courts unless he receives a judgment in his favor. Under such circumstances, the policy concerns underlying the doctrine warrant its application in this case because, as the Court of Appeals found, "[d]ismissing Sasson's appeals furthers the goals of the fugitive disentitlement doctrine by discouraging flight from justice, encouraging compliance with court orders, and promoting the efficient, dignified operation of the courts." [Moscona v. Shenhar, 50 Va. App. 238, 255, 649 S.E.2d 191, 199 (2007)] (citing Degen, 517 U.S. at 824; Jaffe v. Accredited Sur. & Cas. Co., 294 F.3d 584, 596 (4th Cir. 2002)).

Id. at 627-28, 667 S.E.2d at 564.

The ruling of this Court and the Supreme Court of Virginia has precedent in decisions of the United States Supreme Court.

As previously noted, the Supreme Court of the United States addressed this doctrine in Degen, 517 U.S. 820, in a civil forfeiture case. The Court held that federal courts may dismiss an appeal if the party seeking relief is a fugitive while the appeal is pending and explained the underlying reasons of this doctrine, consistent with the third prong of Sasson:

> First, so long as the party cannot be found, the judgment on review may be impossible to enforce. This was the rationale of the first case to acknowledge the doctrine, Smith v. United States, [94 U.S. 97,] 97 [(1876)]: "It is clearly within our discretion to refuse to hear a criminal case in error, unless the convicted party, suing out the writ, is where he can be made to respond to any judgment we may render." See also Bohanan v. Nebraska, 125 U.S. 692 (1887); Eisler v. United States, 338 U.S. 189 (1949). Second, we have said an appellant's escape "disentitles" him "to call upon the resources of the Court for determination of his claims." Molinaro v. New Jersey, 396 U.S. 365, 366 (1970) (*per curiam*). The cases cited so far involved the dismissal of fugitives' petitions in this Court. In reviewing similar practices in state courts for conformity with the Due Process Clause, we have noted further reasons for them: Disentitlement "discourages the felony of escape and encourages voluntary surrenders," and "promotes the efficient, dignified operation" of the courts. Estelle v. Dorrough, 420 U.S. 534, 537 (1975) (*per curiam*) (using those reasons to justify refusing to reinstate an appeal even once an escaped appellant is recaptured).

Id. at 824.

However, the Court rejected the doctrine in Degen, concluding appellant's fugitive status did not prejudice the government:

> There is no risk in this case of delay or frustration in determining the merits of the Government's forfeiture claims or in enforcing the resulting judgment. The Government has shown probable cause to forfeit the property, and Degen must refute the showing or suffer its loss. Since the court's jurisdiction over the property is secure despite Degen's absence, there is no danger the court in the forfeiture suit will waste its time rendering a judgment unenforceable in practice.

Id. at 825.

- 10 -

The United States Supreme Court, in Molinaro, 396 U.S. 365, applied the doctrine, holding that appellant's escape from custody "disentitles the defendant to call upon the resources of the Court for determination of his claims." Id. at 366.

Applying these principles to the facts of this case, we find appellant clearly is a fugitive. Appellant failed to appear at the January 5, 2010 docket call and failed to comply with other terms of the appeal bond. His attorney indicated appellant failed to remain in communication with him and an investigator failed to locate appellant. Based on these facts, the trial court properly found appellant to be a fugitive from justice.[10]

Appellant contends there is no nexus between his fugitive status and the appeal before us. He contends that if being a fugitive alone provides the nexus, it is not necessary for the nexus requirement to be a separate element of the doctrine.

The "nexus" requirement in Sasson has its antecedents in United States Supreme Court jurisprudence. Ortega-Rodriguez held that the "justifications we have advanced for allowing appellate courts to dismiss pending fugitive appeals all assume some connection between a defendant's fugitive status and the appellate process, sufficient to make an appellate sanction a reasonable response." 507 U.S. at 244. "Absent some connection between a defendant's fugitive status and his appeal, as provided when a defendant is at large during 'the ongoing appellate process,' Estelle, 420 U.S. at 542, n.11, the justifications advanced for dismissal of fugitives' pending appeals generally will not apply." Ortega-Rodriguez, 507 U.S. at 249. Because the appellant in Ortega-Rodriguez was recaptured prior to appeal, there was a lack of connection between appellant's earlier fugitive status and the appeal. None of the deterrent functions of the doctrine was relevant. Id.

---

[10] Appellant does not contest his fugitive status.

The "nexus" requirement is actually an evaluation of whether an appellant's status as a fugitive impacts the appellate process. Sasson's rationale was not only that Sasson was a fugitive, but that the object of the appeal was the son's custody. Sasson's fugitive status was premised on a contempt conviction for his withholding the child from the control of the court, thus impairing Shenhar's parental rights. Clearly, the child's custody was the object of the appellate review, so, as the Court of Appeals had previously concluded, Sasson's fugitive status impacted "the very case on appeal." Moscona v. Shenhar, 50 Va. App. 238, 251, 649 S.E.2d 191, 197 (2007).

In Sasson, the object of the appeal was child custody. As noted, the appellant withheld the child from the jurisdiction of the circuit and appellate courts, thus Sasson's fugitive status impacted the decision of the appellate court.[11]

In Ortega-Rodriguez, appellant's status as a fugitive did not impact his appeal because he was returned to custody prior to the appeal. Equally, in Degen, appellant's fugitive status in a forfeiture appeal did not impact the appeal because the forfeiture was essentially an *in rem* proceeding and appellant's presence was not necessary to effectuate the appellate decision. 517 U.S. at 825. But see Estelle, 420 U.S. 534 (upholding a state court's dismissal of the appeal of an escaped inmate and its refusal to reinstate the appeal upon his later recapture).

In this case, appellant was sentenced to an active term of imprisonment based on his conviction of the weapons charge. His appeal challenged the correctness of that conviction. No

---

[11] Interestingly, the Supreme Court of Virginia distinguished Walsh v. Walsh, 221 F.3d 204, 216 (1st Cir. 2000), concluding that in Walsh there was no impairment of the other party's parental rights by appellant's fugitive status, because while the appellant remained in Ireland as a fugitive, on unrelated criminal charges, the children, the object of the appeal, lived in Massachusetts. The appeal involved a denial of a Hague Convention custody petition. Thus, appellant's fugitive status would have no impact on the ultimate custody decision of the appellate court. Sasson, 276 Va. at 627, 667 S.E.2d at 563-64. That appellate court did not exercise the Fugitive Disentitlement Doctrine.

evidence suggests appellant's fugitive status was for reasons beyond his control. It is clear that there is a connection between appellant's fugitive status and the appellate process. See Ortega-Rodriguez, 507 U.S. at 244. Appellant has sought review of the very conviction he seeks to avoid. In Sasson, the appellant failed to produce the very child subject to the custody judgment subject to appeal. Here, appellant has failed to produce himself, the same person whose presence is necessary to comply with any judgment rendered by this Court.

Our last inquiry, under Sasson, is whether dismissal is "necessary to effectuate the policy concerns underlying the doctrine." 276 Va. at 623, 667 S.E.2d at 561. We conclude it is. Jaffee, 294 F.3d 584, succinctly summarizes the factors to be considered: "(1) a party's fugitive status can render a judgment 'impossible to enforce'; (2) the inequity of allowing a fugitive to 'call upon the resources of the Court for determination of his claims,' and (3) the need to 'discourage[ ] the felony of escape and encourage[ ] voluntary surrenders.'" Id. at 596 (internal citations omitted). All of these considerations are present in the instant case.

If appellant prevailed in his appeal, as a fugitive, he would not be available for a re-trial. If he lost the appeal, his absence prevents the execution of his sentence. By absconding, appellant has made himself unavailable to respond to the judgment of this Court. He asks this Court for relief of his conviction yet he has chosen not to abide by the conditions of his appeal bond. To allow his appeal to continue while his fugitive status continues would encourage like-minded defendants to flout the law yet simultaneously seek the benefit of the judicial system. This is the very scenario decried in Ortega-Rodriguez and Degen.

We conclude the Commonwealth has met the third requirement of Sasson. Dismissing this appeal "furthers the goals of the [F]ugitive [D]isentitlement [D]octrine by discouraging flight from justice, encouraging compliance with court orders, and promoting the efficient, dignified operation of the courts." Sasson, 276 Va. at 628, 667 S.E.2d at 564.

- 13 -

We acknowledge, as appellant has argued, dismissal of an appeal, under this doctrine, should be imposed "only in those cases where no lesser sanction or remedy is available." Id. at 623, 667 S.E.2d at 561. Appellant argues that if he loses this appeal, "he will be picked up when found." This contention hardly provides a lesser sanction. It is unknown when, if ever, appellant will be found. We find no less drastic means of protecting the Commonwealth's interest. See Degen, 517 U.S. at 827.

## CONCLUSION

We find that appellant is a fugitive. We further find a sufficient nexus between this appeal and appellant's fugitive status. Finally, we conclude that dismissal of this appeal is necessary to further the goals of the Fugitive Disentitlement Doctrine; specifically, to discourage flight by appellants and to encourage acquiescence with court orders. Therefore, we hold that the Fugitive Disentitlement Doctrine applies, and we grant the Commonwealth's motion to dismiss the appeal.

Dismissed.