UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Ortiz, Friedman and White

CRISTIAN ALEJANDRO PEREZ

v.     Record No. 1945-22-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE FRANK K. FRIEDMAN
JULY 2, 2024

FROM THE CIRCUIT COURT OF GRAYSON COUNTY
H. Lee Harrell, Judge

(Angi N. Simpkins; Barbour & Simpkins, LLP, on brief), for
appellant. Appellant submitting on brief.

(Jason S. Miyares, Attorney General; Ryan Beehler, Assistant
Attorney General, on brief), for appellee. Appellee submitting on
brief.

After a jury trial, the trial court convicted Cristian Perez of possessing with intent to

distribute between 10 and 100 grams of methamphetamine and sentenced him to 20 years'

incarceration with 10 years suspended. Perez challenges the sufficiency of the evidence to prove

that he possessed methamphetamine and argues that the trial court ignored various hypotheses of

innocence. We find no error and thus affirm Perez's conviction.[1]

BACKGROUND

"Consistent with the standard of review when a criminal appellant challenges the

sufficiency of the evidence, we recite the evidence below 'in the "light most favorable" to the

Commonwealth, the prevailing party in the trial court.'" *Hammer v. Commonwealth*, 74

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] We note that the parties waived oral argument in this case. *See* Code § 17.1-403(ii)
(permitting the parties to waive argument).

Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). This standard "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

In August 2020, Grayson County Sheriff's Patrolman Jeremy Moss discovered a "small amount" of methamphetamine during a search of a vehicle. The driver told Moss that he obtained the drugs from Iran McMillian. Moss and Grayson County Sheriff's Investigator Travis Jefferson went to McMillian's house. Moss searched the house with his police dog without discovering any narcotics, but other officers conducting a manual search uncovered marijuana and drug paraphernalia in a drawer in McMillian's bedroom.[2]

The officers asked McMillian if he "could get somebody to bring some drugs to the house." McMillian agreed and asked in a text message if Perez "was still coming by." Perez responded that he was "on his way." The officers learned that Perez would be in a white Chrysler 200, and Moss left the house and waited for the vehicle to pass him. A white Chrysler 200 driven by a woman and with a male passenger, later identified as Perez, passed Moss, who notified Jefferson that the vehicle was coming.

Jefferson and other officers left McMillian alone in the house and concealed themselves outside to wait for Perez's arrival. After 2:00 a.m., Perez arrived in a white Chrysler 200 and exited the vehicle, which remained running with its headlights on. Perez went to the house and knocked, and McMillian let him in and shut the door. As the door closed, Jefferson stepped up to it and looked inside. He could not see McMillian, but observed Perez walk toward a couch in the living

---

[2] McMillian was on probation for a felony and had previously waived his Fourth Amendment protections against search and seizure, allowing the search to be conducted without a warrant.

room and sit down. Perez appeared to be "rolling" a "knotted plastic baggy" containing a "crystal substance" in his hand. Jefferson and the other officers then entered the house.

Jefferson told Perez to get on the ground. Perez "bent over" before complying, and Jefferson took him outside and into custody. Moss returned to the house and searched the house again with his police dog. Though the dog did not indicate that narcotics were present, Jefferson discovered a knotted plastic baggy under the couch, about a "hand's length" from the couch's front. Subsequent laboratory testing determined that the baggy held 26.89 grams of a crystalline substance containing methamphetamine.

At trial, Jefferson testified that he watched Perez through the door's window for about 30 to 45 seconds before entering the house and never lost sight of him. Jefferson discovered the knotted baggy "directly underneath" where Perez had been sitting and in the area in which he observed Perez bend over before complying with the order to get on the ground. He explained that he showed it to Perez, who claimed it was "not [his] dope." The trial court qualified Jefferson as an expert in substance abuse and distribution. He opined that the quantity of methamphetamine found in the incident was inconsistent with personal use and had a street value of between $80 and $100 per gram.

McMillian—testifying for the Commonwealth—explained his belief that Perez understood his request to bring drugs to McMillian's house. He admitted that he had been in the "business" of selling drugs at the time of the incident and acknowledged that he had been convicted of about seven felonies and "a bunch of probation violations." McMillian asserted that he had "no drugs" in the house before Perez arrived and had sold the last of his drug supply to a customer. According to McMillian, when the officers first arrived at his house on the night of the incident, they "looked everywhere" and "rummaged all through" his belongings looking for contraband.

McMillian admitted that before the trial, he told Perez's counsel that the reason Perez had come to his house was to "get some tattoo stuff." But he testified that Perez was supposed to have brought him drugs earlier in the day. The evidence was that Perez had his hand "cupped" when he entered the home, but McMillian saw nothing in Perez's hand because he was looking outside at Perez's car and "wondering why his lights were on." McMillian stated that Perez had brought him drugs before but usually came alone. He described the night of the incident as "abnormal" and said he asked Perez who was in the car.

Perez moved to strike the evidence after the Commonwealth's case-in-chief. Perez argued that although Jefferson testified that he "maintained visual contact with him" the whole time, he did not testify that he saw Perez "place [the methamphetamine] under the sofa." And though the evidence demonstrated that Perez may have had "something in his hand," the Commonwealth had not shown what it was.

The trial court denied the motion to strike and made several factual findings. It found that the initial search of McMillian's house did not reveal any "large amounts of any controlled substance." The trial court also found that the police request that McMillian initiate a drug transaction with someone led to Perez's arrival. Further, Jefferson saw Perez go into the house with a "white crystalline substance in a ball within his hands," followed by some "furtive movements" before the discovery by the officers of a "large amount" of methamphetamine. Finally, the trial court found that McMillian's testimony supported a finding that Perez supplied the methamphetamine and Jefferson stated that the quantity was not for personal use. Accordingly, the trial court denied the motion to strike.

Perez's wife, Melanie Perez, testified that the couple had been on their way to Waffle House when Perez stopped by McMillian's house to talk about a tattoo. She stated that she turned the car and lights off after parking at the house. Melanie explained on cross-examination that she believed

her husband would be getting a tattoo that night and that she planned to sit in the car and wait for him while he got the tattoo.

Perez testified in his own defense that on the night of the incident, he went to McMillian's house to talk about a tattoo. He admitted that he still had not gotten the tattoo. Perez stated that he had intended to go by McMillian's house the day before but could not because he had to work the night shift at Taco Bell. He claimed he had not received a text message from McMillian on the night of the incident and that he let himself in the house because the door was open. Perez denied having anything in his hand or putting anything under the couch and maintained that he went "straight to the ground" when Jefferson told him to. Perez maintained that the methamphetamine the officers found at McMillian's house did not belong to him and denied ever bringing narcotics to McMillian.

On rebuttal, Jefferson testified that he was with McMillian during the exchange of text messages between the two. He saw the message from McMillian asking Perez where he was and Perez's reply that he was "on his way." He also stated that he could not recall seeing any messages that referenced a tattoo.

Perez renewed his motion to strike the evidence, for the same reasons as before. The trial court found that despite the testimony that was "contradictory" to the Commonwealth's evidence, the evidence was sufficient to allow the jury to consider the case. Accordingly, the trial court denied the renewed motion to strike the evidence.

After argument by counsel, the jury found Perez guilty of possessing with intent to distribute between 10 and 100 grams of methamphetamine. Accordingly, the trial court convicted Perez and subsequently sentenced him to 20 years' incarceration with 10 years suspended. Perez appeals.

ANALYSIS

Perez argues that the evidence did not prove that he "knowingly and intentionally possessed" the methamphetamine but that he merely was near it.[3] He emphasizes that McMillian testified that he saw nothing in Perez's hands and that Jefferson did not see Perez place anything under the couch. Perez also contends that nothing proved that the bag found under the couch was the same bag Jefferson observed in his hands. Finally, Perez argues that the evidence did not exclude the reasonable hypotheses of innocence that the methamphetamine was already under the couch and that Jefferson mistakenly thought that he saw a plastic bag of methamphetamine in Perez's hands.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193

---

[3] Perez's assignments of error also challenge the sufficiency of the evidence to prove that he intended to distribute methamphetamine. But his arguments on brief solely concern the sufficiency of the evidence to prove that he *possessed* the methamphetamine. Rule 5A:20(e) requires appellants to present this Court with "*argument* (including principles of law and authorities) relating to each assignment of error." (Emphasis added). "[W]e have repeatedly stated how undeveloped arguments 'do not merit appellate consideration.'" *Sfreddo v. Sfreddo*, 59 Va. App. 471, 494 (2012) (quoting *Reid v. Commonwealth*, 57 Va. App. 42, 48 (2010)). Perez provides no argument in his brief to support the portion of his assignments of error concerning his intent to distribute, and we find this omission significant. Thus, his claims that the trial court erred by not striking the Commonwealth's evidence that he intended to distribute the methamphetamine are waived.

(2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

To obtain a conviction for illegal drug possession, "the Commonwealth must prove beyond a reasonable doubt that the accused was aware of the presence and character of the drug and that the accused consciously possessed it." *Yerling v. Commonwealth*, 71 Va. App. 527, 532 (2020). "Mere proximity to a controlled drug is not sufficient to establish" possession. *Id.* (quoting *Drew v. Commonwealth*, 230 Va. 471, 473 (1986)).

But possession can be proven in the absence of direct evidence. "It is firmly established that '[c]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" *Kelley v. Commonwealth*, 69 Va. App. 617, 629 (2019) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). We do not view circumstantial evidence "'in isolation' because the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable [fact finder]' to conclude beyond a reasonable doubt that a defendant is guilty." *Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019) (alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)). Our review "does not distinguish between direct and circumstantial evidence, as the fact finder itself 'is entitled to consider all of the evidence, without distinction, in reaching its determination.'" *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)).

Here, the officers searched McMillian's house for contraband before Perez arrived, finding marijuana and paraphernalia but no narcotics. They arranged for McMillian to attempt a

controlled buy, observing his communications with Perez. After arriving at McMillian's house, Perez held a knotted plastic bag with what appeared to be methamphetamine while sitting on a couch. Jefferson observed Perez bend over before complying with his command to get on the floor, and discovered the bag of methamphetamine under the couch, directly below where Perez had been sitting and about a hand's length from the front of the couch. Thus, the evidence supports a finding that Perez possessed the methamphetamine and placed it under the couch before its discovery. *See Bennett v. Commonwealth*, 69 Va. App. 475, 494-95 (2018) (affirming that appellant distributed drugs during a controlled buy because "investigators searched the informant before and after the transaction, monitored his movements throughout the relevant period of time, and kept him in view except for the period during which he met the appellant").

Finally, the "'reasonable hypothesis of innocence' concept is also well defined. The Commonwealth need exclude only reasonable hypotheses of innocence that 'flow from the evidence itself, and not from the imagination' of the defendant." *Kelley*, 69 Va. App. at 629 (quoting *Pijor*, 294 Va. at 512). "Whether an alternate hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly wrong." *Holloway v. Commonwealth*, 57 Va. App. 658, 666 (2011) (quoting *Emerson v. Commonwealth*, 43 Va. App. 263, 277 (2004)). The jury's decision to reject Perez's hypotheses of innocence is not plainly wrong. His claim that the methamphetamine was present before his arrival is unsupported by the evidence, given that the officers searched the house before his arrival and found no narcotics.

Thus, the Commonwealth's evidence was sufficient to sustain appellant's conviction for possession with intent to distribute between 10 and 100 grams of methamphetamine. The trial court did not err by denying Perez's motions to strike the evidence.

CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*