# COURT OF APPEALS OF VIRGINIA

## Record No. 0190-25-1

JACK Z. YETIV, ADMINISTRATOR, ET AL.

v.

B. CULLEN GIBSON, COMMISSIONER OF ACCOUNTS, ET AL.

Present: Judges Causey, White and Frucci

Argued at Virginia Beach, Virginia

Opinion Issued June 9, 2026[*]

---

### FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Everett A. Martin, Jr., Judge

Jack Z. Yetiv (William W. Sleeth III; Jonathan W. Gonzalez; Timothy J. Lyle; Gordon Rees Scully Mansukhani, LLP, on briefs), for appellants.

Flora T. Hezel, Senior Assistant Attorney General (Jason S. Miyares,[1] Attorney General; Steven G. Popps, Chief Deputy Attorney General; Leslie A.T. Haley, Deputy Attorney General, on brief), for appellee B. Cullen Gibson, Commissioner of Accounts.

Amicus Curiae: Virginia Conference of Commissioners of Accounts (John K. Cottrell; Cottrell Fletcher & Cottrell PC, on brief), for appellee B. Cullen Gibson, Commissioner of Accounts.

---

## MEMORANDUM OPINION BY
## JUDGE KIMBERLEY SLAYTON WHITE

This case is about whether a trial court can dismiss a petition for aid and guidance filed by an estate administrator sua sponte based on the finding that the party opponent Commissioner of Accounts has quasi-judicial immunity. Jack Yetiv ("Yetiv") is the administrator and a 50% beneficiary of his deceased brother's $4 million estate ("Estate"). The Estate is also shared by

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

Yetiv's two nieces ("Sister's Heirs"), who each own 25%. After a dispute between Yetiv and Sister's Heirs, Yetiv hired legal representation using Estate funds.

These attorney fees form the factual impetus for the present legal action. Norfolk City Commissioner of Accounts, B. Cullen Gibson ("Gibson"), determined that Yetiv was obligated to reimburse the Estate for the attorney fees, though she had previously approved Yetiv's accounting of some of them as Estate expenses. A series of disagreements over Gibson's determination led Yetiv to file a petition for the court's aid and guidance ("Petition") and Gibson to file a rule to show cause ("show cause") why Yetiv had not reimbursed the Estate. At a hearing on the show cause proceeding, the trial court discussed Yetiv's Petition and eventually dismissed it outside of the hearing on the basis that Gibson had quasi-judicial immunity and was thus not subject to suit from Yetiv.

Yetiv makes seven assignments of error that we organize into three sections. (1) The trial court erred in dismissing the Petition without ensuring adequate notice and service prior to the show cause hearing in which the Petition was addressed (assignments of error 1, 2, 5). (2) The trial court erred in dismissing the Petition thereby (a) placing Yetiv in an impossible position as a fiduciary, (b) ruling that Yetiv lacked standing to pursue his Petition as a Texas attorney in Virginia courts, and (c) failing to grant Yetiv an opportunity to cure problems regarding his standing (assignments of error 4, 6, 7). Finally, (3) the trial court erred in ruling that Gibson is immune from suit (assignment of error 3).

After a discussion of the facts pertinent to our ruling, we address each issue in turn.

BACKGROUND

Steve Yetiv, a Virginia resident, passed away on March 21, 2018, and Jack Yetiv, his brother and appellant here, became the administrator and beneficiary of his Estate. The Estate is worth close to $4 million, around $2 million of which was in a brokerage account at the time of

Steve Yetiv's death. Since Steve Yetiv died intestate, his Estate passed according to Virginia law, leaving 50% to each of Steve Yetiv's siblings, Jack Yetiv and their deceased sister, whose share is further divided in half—25% each—between her two children, Sister's Heirs.

As administrator of the Estate, Yetiv was obligated to provide an accounting every year to the Commissioner of Accounts for the City of Norfolk, who was Gibson during the relevant time period for this case. *See* Code § 64.2-1304. No parties dispute that Yetiv did so as well as that he provided accounting to counsel for Sister's Heirs. During Yetiv's administration of the Estate, a dispute arose between him and Sister's Heirs about whether it would be best to liquidate the brokerage account assets. Despite his own reluctance as a beneficiary to do so, Yetiv liquidated the brokerage assets to accommodate the preferences of Sister's Heirs. Despite this, Sister's Heirs eventually alleged that Yetiv had mishandled his duties as administrator. Yetiv engaged counsel to proceed through negotiations with Sister's Heirs and to close the Estate. He used Estate funds to pay attorney fees.

Gibson, in the Fifth Accounting covering May 1, 2022 through April 30, 2023, approved Yetiv's accounting that included $7,167 in attorney fees for Yetiv paid by the Estate. Gibson scheduled a debts and demands hearing for December 28, 2022, but never followed through with it and issued a written report on March 9, 2023, that did not address attorney fees. In a July 17, 2024 letter, Gibson demanded reimbursement to the Estate of $9,116.50 for Yetiv's attorney fees, which included the previously approved amount, to be paid within 30 days. On August 2, 2024, Yetiv responded by letter requesting information on the legal and factual basis for Gibson's determination that the attorney fees were for his personal use instead of for the benefit of the Estate and that Yetiv was obligated to reimburse the Estate. In his letter, Yetiv inquired whether the demand for reimbursement of the Estate constituted a rejection of his May 2024 accounting (the Sixth Accounting), which included $1,949.50 in additional attorney fees that

- 3 -

brought the total to the $9,116.50 amount. On August 9, 2024, Gibson responded via letter giving her rationale and reiterating the 30-day deadline for reimbursement. Yetiv sent another letter on September 9, 2024, making the same three points as the August letter. Instead of responding to Yetiv's second letter, on September 11, 2024, Gibson sent an invoice for the amount demanded and for a $40 fee for failure to pay on time. Yetiv sent an email in response, noting his intention to seek the court's review, asking about the status of the previous years' accountings up to 2023, asking if the demand was a rejection of the accounting sent in May 2024, and asking about the process of seeking review.

Not satisfied with Gibson's responses, Yetiv filed the Petition, his "Administrator's Request for the Court's Aid and Guidance," on October 16, 2024. In it he asked whether Gibson could revoke her previous approval of his accounting, whether a debts and demands hearing should occur, and whether reimbursement is necessary. Gibson responded to the Petition indicating a willingness to participate in a hearing to address his failure to reimburse the Estate, addressing Yetiv's allegations in the Petition, and providing an explanation for her conclusion that he must reimburse the Estate. Shortly thereafter, on November 18, 2024, Gibson served her show cause action against Yetiv for the unreimbursed attorney fees. A hearing was set for December 3, 2024, on the show cause matter.

The docket for the show cause hearing listed only that matter and not the Petition. Yetiv complained that the timing and service requirements were not met for the show cause hearing according to Code § 64.2-1215. The hearing occurred anyway on the date appointed, and Yetiv appeared remotely after complying with Rule 1:27. At the hearing, the trial court overruled the notice objections and inquired about the Petition, of which it had no previous knowledge.[2]

---

[2] Yetiv claims that the trial court raised the inquiry sua sponte, but the trial court rejects that claim, noting that it "would not have known of its existence had it not been mentioned by either Yetiv or Gibson."

Gibson offered no evidence, and Yetiv's attempts to offer documents remotely were denied. The trial court noted that the technology in the virtual hearing would have made the documents difficult to read and that Yetiv made no proffer of the documents' contents. After the trial court expressed some concern over Yetiv's standing for the Petition due to his being licensed only in Texas and not Virginia, Yetiv suggested that he could alternatively serve *pro hac vice* as attorney for the Estate working with a Virginia attorney or *pro se* as a beneficiary of the Estate. The trial court did not address these options.

After the hearing, Yetiv filed a "Memorandum of Points and Authorities and Evidentiary Support Relating to Commissioner's Show-Cause Hearing Held December 3, 2024." The trial court, overruling objections by Gibson, incorporated this memorandum into the record.[3] The trial court explained that the issues related to "the propriety of Yetiv's charging the [E]state for his [attorney fees]" would be "resolved in a future hearing."

In an order issued on December 30, 2024, the trial court ruled that Gibson is immune from suit due to her quasi-judicial status and "sua sponte" dismissed the Petition with prejudice. The trial court stated that the dispute about the propriety of Yetiv's charging the Estate for attorney fees was "immaterial to the reason the Court entered the final order" dismissing the Petition. Yetiv timely appealed.

ANALYSIS

I.  Notice and Service Requirements

Yetiv claims that the trial court's holding the show cause hearing when it did and later dismissing the Petition with prejudice violated his due process rights as codified in Virginia statute, the Virginia Constitution, and the United States Constitution. According to Yetiv, these violations

---

[3] The show cause matter remains pending for consideration of the notice issue and the contested legal bills.

of Virginia statute and due process are based on the trial court's failure to ensure proper notice and service of the show cause hearing and its inclusion of a discussion of the Petition.

First, Yetiv's argument suggests that the trial court failed to ensure proper compliance with Virginia statute by holding a hearing despite Gibson's failure to cite an appropriate statute upon which the action is based and to serve the action upon Yetiv at least 30 days before the hearing. Gibson cites Code § 64.2-1215 and Code § 26-17 (repealed) in the show cause filing. Yetiv relies on notice language in § 64.2-1215 to argue that Gibson failed to comply with two requirements of Virginia statute—that the commissioner of accounts shall issue a summons "through the sheriff or other proper officer" and that the commissioner reports to the court only if "the fiduciary fails to make the required return within 30 days after the date of service of the summons." Code § 64.2-1215. Since the summons for the show cause hearing was served within 30 days of the hearing and by a clerk, rather than a sheriff or other law enforcement officer, Yetiv claims the hearing violated statutory notice and service requirements. According to his argument, "other proper officers" has meant law enforcement officers in case law.

Second, Yetiv points to the fact that the Petition was not mentioned in the show cause docket, and Virginia law does not generally support a sua sponte dismissal without proper notice and a hearing. Yetiv believes there is no support for the trial court's dismissal without a hearing in case law or the Rules of the Supreme Court of Virginia.

Finally, Yetiv argues that the court's dismissal violated his due process rights as codified in Article I, Sections 11 and 15 of the Virginia Constitution, and the Fourteenth Amendment of the United States Constitution. He claims that Virginia's due process rights entitle him to adequate notice and the right to be heard. The right to be heard includes the right to present evidence, cross-examine witnesses, and call witnesses. According to the argument, not only did the trial court deny Yetiv adequate notice, but it gave him no chance to defend the Petition either by presenting

evidence or notifying him of the quasi-judicial immunity before and during the hearing. Similarly, the United States Constitution includes the right to notice sufficient to "apprise" interested parties and give them a chance to present objections. *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950). As applied to this case, Yetiv claims that "[s]tripping the Estate of an allowed expense and exposing the fiduciary to repayment liability is a classic deprivation of 'property' within the meaning of the Fourteenth Amendment."

"Before this Court may consider the merits of a case, it must determine whether it has jurisdiction." *Johnson v. Commonwealth*, 72 Va. App. 587, 595 (2020) (citing *Minor v. Commonwealth*, 66 Va. App. 728, 738 (2016)). We are a court of limited jurisdiction with "subject matter jurisdiction over only those classes of cases specified by statute." *Friedman v. Smith*, 68 Va. App. 529, 538 (2018) (quoting *de Haan v. de Haan*, 54 Va. App. 428, 436 (2009)). Virginia statute grants general appellate jurisdiction over "any *final* judgment, order, or decree of a circuit court in a civil matter." Code § 17.1-405(A)(3) (emphasis added). A judgment, order, or decree is final if it "disposes of the entire matter before the court, . . . gives all the relief contemplated, and leaves nothing to be done by the court except the ministerial execution of the court's judgment, order, or decree." Rule 1:1(b); *see also* Rule 1:2(d) (indicating that "any order which adjudicates fewer than all the claims . . . of fewer than all the parties in the action is not a final judgment").

Given our limited jurisdiction over issues that are not disposed of in a final order, we may only discuss those issues that were relevant to the Petition dismissal. The final order dismissing the Petition with prejudice states the court's reasoning very clearly. After briefly explaining the allegations and the recent procedural developments in the matter, the trial court writes, "[u]pon further reflection, the Court *sua sponte* dismisses the petition" because "[a] commissioner of accounts is a quasi-judicial official." "As such, she is immune from suit" so long as she meets the

requirements for quasi-judicial immunity. The trial court spends the rest of the order explaining that Gibson does meet the requirements.

The notice and service issues, as well as the propriety of the reimbursement demand are set to be discussed in further hearings for the show cause proceeding. Yetiv filed a "Written Statement in Lieu of Transcript" on February 28, 2025. Therein, he claims, "[t]he Court overruled Yetiv's aforementioned objections about notice." The trial court responded that "[t]he Court did not overrule Yetiv's objections, but continued the hearing." Regarding Yetiv's statements about his dispute pertaining to the statutes cited by Gibson, his ability to prepare for the hearing, Gibson's failure to properly serve Yetiv with the summons, and the general matter of the propriety of Yetiv charging the Estate for the attorney fees, the court indicated these issues would also be resolved in a future hearing in the show cause proceeding.

However, just because there are similar or parallel issues in separate actions does not eliminate Yetiv's right to be heard on his action. While the trial court made no judgment on the notice and service issues related to the show cause rule, it did rule on the Petition without giving Yetiv the chance to be heard. "Constitutional guarantees of procedural due process provide certain 'minimum requirements' that 'must attend administrative hearings.'" *Va. Bd. of Med. v. Hagmann*, 67 Va. App. 488, 501 (2017) (quoting *Hladys v. Commonwealth*, 235 Va. 145, 147 (1988)). "These guarantees include 'timely and adequate notice, the right to present evidence and confront adverse witnesses, the right to assistance of retained counsel, and . . . the right to an impartial decision maker.'" *Id.* (alteration in original) (quoting *Mall Amusements, LLC v. Va. Dep't of Alcoholic Beverage Control*, 66 Va. App. 605, 613 (2016)). "A day in court, an opportunity to be heard, is an integral part of due process of law." *Venable v. Venable*, 2 Va. App. 178, 181 (1986) (quoting *Moore* v. *Smith*, 177 Va. 621, 626 (1941)). "When a trial court, in the exercise of its discretion, holds an *ore tenus* hearing, and one of the parties requests an opportunity to be present,

to be heard, and to cross-examine adversary witnesses, due process requires that the court afford the litigant that opportunity." *Id.* at 181-82 (quoting *Burts* v. *Burts*, 227 Va. 618, 620 (1984)).

Here, the trial court discussed the Petition in the show cause hearing without giving Yetiv notice that the Petition was a subject of the hearing. Though Yetiv did submit an evidentiary supplement, this is not a replacement for adequate notice, or the right to present an argument, submit evidence, cross-examine adversary witnesses, or any other essential right he would have in an *ore tenus* hearing. Further, the trial court made its judgment based only on the discussion at the show cause hearing and the evidentiary supplement. While these do not make the notice and service issues related to the show cause hearing final judgments, they do render Yetiv's due process rights infringed related to the Petition. Thus, we find that the dismissal must be reversed and the trial court must provide Yetiv the opportunity to be heard on that matter.

## II. Fiduciary Responsibilities and Standing

Yetiv claims the trial court erred in dismissing the Petition and thereby putting him, as a fiduciary, in an impossible position with respect to the status of Gibson's earlier approval of accountings, the propriety of the reimbursement demand, and Gibson's obligation to hold a debts and demands hearing.[4] He also claims error in the dismissal related to the trial court's ruling that he lacks standing to sue Gibson because he is not a Virginia-licensed attorney and its failure to allow Yetiv to cure the standing issue by allowing him to stand *pro se* or *pro hac vice*.

In Yetiv's "Written Statement in Lieu of Transcript," he claims that "[a]lthough the Court did not make a ruling at the hearing, the Court stated that it would likely dismiss the Petition because Yetiv did not have 'standing' to pursue his petition." There is ambiguity over whether Yetiv is asserting that the trial court determined he did not have standing or just that he "likely"

---

[4] *See infra* at 10 n.5 for a discussion of Gibson's "refus[al] to convene" the debts and demands hearing.

did not have standing. Gibson interpreted Yetiv's statement as asserting the former and objected, stating that the paragraph's "reference to the Court 'holding that Yetiv lacked "standing"'" is erroneous. The Court did not make a finding at the hearing, nor in the appealed Order, regarding Yetiv's standing." The trial court, in its own response, sustained Gibson's objection.

The trial court also explicitly contradicted Yetiv's rendering of the facts on the issue of standing in its dismissal order. The trial court does not make any judgment about standing, but rather "the Court declined to address [the Petition at the show cause hearing] because it questioned whether Yetiv, a member of the State Bar of Texas, but not the Virginia Bar, could file a pleading in a representative capacity." Far from having decided that Yetiv lacked standing, the trial court refrained from deciding on that point.

The foregoing renders the standing issue outside the limited jurisdiction of this Court, just like the issues of notice, service, and the propriety of charging the Estate for attorney fees related to the show cause rule. This also means that the issue of the trial court's failure to allow Yetiv to cure the standing problem is not only outside of this Court's jurisdiction; the issue does not exist at all. If the trial court raises no problem with Yetiv's standing, then there is no problem for him to cure.

Additionally, "[a]n appellate court decides cases 'on the best and narrowest ground available.' . . . Coupled with these principles of judicial prudence is the proposition that an appellate court may structure a decision on an 'assuming but not deciding' basis." *Podracky v. Commonwealth*, 52 Va. App. 130, 134 (2008) (second alteration in original) (quoting *Luginbyhl v. Commonwealth*, 48 Va. App. 58, 64 (2006)). Thus, we assume without deciding that Yetiv has standing to make a due process challenge to the trial court's dismissal of the Petition. *See id.* Similarly, the questions surrounding Yetiv's duty as an administrator evaporate upon our

reversal. Finally, the quasi-judicial immunity question is controlling on the Petition dismissal, so whether Yetiv will be in an "impossible position" remains to be seen.[5]

## III. Quasi-Judicial Immunity

Yetiv makes a number of different allegations with respect to the quasi-judicial immunity issue. "We apply a de novo standard of review when '[t]here are no disputed facts relevant to the [judgment] and it presents a pure question of law.'" *Smith v. Larrowe*, 86 Va. App. 276, 285 (2025)

---

[5] Yetiv asserts that Gibson was required to hold a debts and demands hearing at his request. Indeed, according to Virginia statute, "[a] commissioner of accounts . . . shall, when requested to so do by a personal representative or any creditor, legatee, or distributee of a decedent, . . . conduct a hearing for receiving proof of debts and demands against the decedent or the decedent's estate." Code § 64.2-550(A). The question before us is whether this requirement was violated by Gibson, and whether the matter of the purported violation is reviewable by this Court at this stage of procedure.

"With respect to each assignment of error, the standard of review and the argument . . . must be stated in one place and not scattered through the brief." Rule 5A:20(e). "[W]e have repeatedly stated how undeveloped arguments 'do not merit appellate consideration.'" *Sfreddo v. Sfreddo*, 59 Va. App. 471, 494 (2012) (quoting *Reid v. Commonwealth*, 57 Va. App. 42, 48 (2010)). "Rule 5A:20(e) requires a party to include in his brief: 'argument—including principles of law and authorities,' for each assignment of error." *Conley v. Commonwealth*, 74 Va. App. 658, 681 (2022). "A court of review is entitled to have the issues clearly defined and to be cited pertinent authority. The appellate court is not a depository in which the appellant may dump the burden of argument and research." *Jones v. Commonwealth*, 51 Va. App. 730, 734 (2008) (quoting *People v. Trimble*, 537 N.E.2d 363, 364 (Ill. App. Ct. 1989)).

Yetiv mentions the debts and demands hearing issue nine times in his brief. Six appear in statements of the assignments of error or in the statement of facts. The other three times it is mentioned are in relation to the dismissal of the Petition, where Yetiv complains that Gibson's obligation to hold a hearing would have been addressed. Yetiv makes no mention why failure to hold a debts and demands hearing puts him in an "impossible" position as a fiduciary. He merely complains that the trial court, by improperly dismissing the Petition, avoided any discussion of a debts and demands hearing, such as whether Gibson's "refusing to convene" a hearing was an adjudicatory decision or whether the Petition rendered Yetiv a surrogate by "assert[ing] any claim or right on behalf of the Estate's beneficiaries." None of these concerns explain why Yetiv is in an "impossible" position as a fiduciary or why Gibson was required to hold a debts and demands hearing in context of the facts of this case. Further, there is not even an indication in the record or Yetiv's brief why he believes Gibson in fact "refus[ed] to convene" a debts and demands hearing. According to the record, Gibson attempted to hold one (on December 28, 2022) where no parties appeared and later stated that though "[t]he [Commissioner of Accounts] could hold a hearing," in this case "[n]either of these parties, who are in Texas and Tennessee, have expressed an interest in coming to Virginia for such a hearing." Thus, Yetiv waives argument on the issue of Gibson's failing to hold a debts and demands hearing except insofar as it pertains to the question of Gibson's immunity, which is not addressed here.

- 11 -

(first alteration in original) (quoting *Smith v. McLaughlin*, 289 Va. 241, 251 (2015)). "[W]here no evidence is taken in support of a [dismissal from judicial immunity], the trial court, and the appellate court upon review, consider solely the pleadings in resolving the issue presented." *Id.* (first alteration in original) (quoting *Fines v. Rappahannock Area Cmty. Servs. Bd.*, 301 Va. 305, 312 (2022)). However, "[a]s we have often said, '[t]he doctrine of judicial restraint dictates that we decide cases "on the best and narrowest grounds available."'" *Commonwealth v. White*, 293 Va. 411, 419 (2017) (second alteration in original) (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015)). Since we hold that Yetiv's right to be heard was infringed by the trial court's sua sponte dismissal, we need not address the substantive issue that formed the basis of its judgment. Accordingly, we reach no conclusion about whether Gibson is protected by quasi-judicial immunity in this case.

CONCLUSION

For the foregoing reasons, we reverse the trial court's dismissal of the Petition and remand for rulings consistent with this opinion.

*Reversed and remanded.*